GEORGINA W. THOMAS, appellant,

*v.*

WILLIAM J. THOMAS, respondent.

[Submitted March 23d, 1917. Decided June 18th, 1917.]

On appeal from a decree of the court of chancery advised by Advisory Master Roe, who filed the following opinion:

The petitioner prays for divorce from bed and board on the ground of extreme cruelty.

The parties were married November 29th, 1904, and lived together as husband and wife until August 26th, 1915, at which time the petitioner left the house of the defendant. Two children were born of the marriage, one on August 28th, 1905, and the second child in June, 1911.

At the time of the marriage, the defendant had two boys by a former marriage, aged nine and thirteen years, respectively, and who lived in the family.

The trouble between the parties was occasioned by these children. The petitioner, it is clear, disliked these children, and did nothing to win their confidence; she gave them no care nor attempted to exercise control over them. This is plainly indicated by petitioner's statements of the filthy condition of the room in which these children slept, their careless habits and their long absences from their home.

The first serious trouble between the parties occurred in 1906. Petitioner says her husband became angry because of the boys. Exactly why, she does not say, but says these boys stayed away some days—and that her husband catching hold of her, throwing her down said, "This is my boys' home, if you do not like it get out." This statement would indicate that the defendant was angered because the petitioner had driven his two young boys from the home.

In 1908, the petitioner complains that her husband refused to furnish her medical attendance, and that she was forced to go south with her mother for her health. The husband denies that he ever failed to provide such medical attendance when necessary. The fact that the petitioner did come back in 1909 and continued to live with her husband, and the further fact appearing that no trouble existed between the two until the summer of 1911, after a second child was born, is sufficient to eliminate all consideration of all prior acts to this date.

On May 15th, 1911, Leonard, the oldest stepson, was arrested and the defendant accused the petitioner of causing this arrest.

The facts and circumstances of this arrest do not appear, but upon this occasion, the defendant became very angry and called his wife vile names, striking her, and said he never would cohabit with her again.

That from that date until August 26th, 1915, they occupied different rooms and never lived together as man and wife.

The defendant says he attempted to reconcile his wife but she refused—this is not denied.

In October, 1912, she interfered with her husband in correcting their child, and she says he struck her then.

From then until March, 1915, there is no evidence showing the manner the parties lived together, except the general statement of the wife that defendant did not give her the money she required. On this last date, she says her husband threatened to throw her over the banisters, upon her demand of him for more money, and that in May, defendant became angry because she had taken some sugar that belonged to him and struck her, but nothing else is detailed.

The petitioner left her husband's house in August, 1915. No facts are given upon which the court can determine the cause of her leaving at that time.

The defendant practically admits these facts, but says he gave her all his wages until about six months before she left when she refused to cook or provide anything for him and from that time forward he gave her the amount she says.

The defendant's conduct, whatever may have been the provocation, in striking his wife or in calling her names, which he admits, is reprehensible, and does not entitle him to any consideration. He has been guilty of using vile language and actual violence towards the wife he had promised to protect. His conduct is not excused by the fact that he was angry or that the conduct of his wife provoked him to these extremes.

On the other hand, the petitioner herself is not guiltless. In a measure she provoked these outbursts on the part of her husband. She, undoubtedly, had formed a dislike for her step-children, and her description of the manner in which these children lived, or tried to live at that house, indicates that she did not do her duty as a wife. They were her husband's children, and it was her duty, as the wife of the defendant, to have exercised a care over them, and she appears never to have exercised any care. On the other hand, she has neglected them, whether from her own dislike of them or to tantalize her husband, does not appear, but the fact does appear that in this respect she made her husband angry and continued to make him angry and to call down upon herself the treatment of which she complains.

They lived together for eleven years and these outbursts extended over that period at recurrent intervals. At the time she left there was nothing that had taken place that would lead her to any apprehension with regard to her safety or health. She had deserted her husband for some period before she left his house.

"Extreme cruelty," as defined by the courts of New Jersey, is laid down in *Close* v. *Close, 25 N. J. Eq. 526*, and that is:

"Where the husband has been guilty of or there is reasonable ground to apprehend that he will be guilty of any actual violence that will endanger the safety or health of the wife, or

87 N. J. Eq. Thomas v. Thomas.

where he has inflicted upon her any physical injury, accompanied by such persistent exhibition of ill-feeling and opprobrious epithets as will endanger her health, or render her life one of such extreme discomfort and wretchedness as to incapacitate her to discharge the duties of a wife, the decree of separation should be pronounced."

This doctrine is approved in *Taylor* v. *Taylor*, *73 N. J. Eq. 745*, wherein it says that where there is no physical violence towards her, that she must prove that the conduct is such as to place her life or health in danger and to render her life one of extreme discomfort and wretchedness such as to incapacitate her in the discharge of her duties.

In the latter case, the husband used profane language and was indifferent to his wife, but the court held that this was not sufficient.

In the same court, in *Smith* v. *Smith, 40 N. J. Eq. 566*, it was held that a charge of incest made by the husband against his wife, and persisted in without cause, attended by slight acts of violence, suspicious conduct, and a reasonable apprehension of bodily harm, is a good ground for separation.

Our courts have never held that coarse and profane language, actual violence or lack of proper food and medicine, are of themselves sufficient grounds for divorce from bed and board. They go a step farther and say that if any of these acts of the husband will endanger the safety or health of the wife or that there is reasonable ground to apprehend that they will render her life one of such wretchedness as to incapacitate her towards the discharge of her duties. In that case only will a decree be granted.

In the present case, none of these acts of personal violence, running over a period of ten years, are of such character as to endanger petitioner's safety or health—they were outbursts of anger and of no serious character. The same may be said of the use of the vile language—it only occurred at these angry moments. The refusal of more money for petitioner than she thought necessary does not bring this case within the doctrine of "extreme cruelty."

But, in the present case, it is clear that the petitioner brought about this very state of affairs. There are mutual obligations

which the husband as well as the wife must perform. If the wife, knowing the disposition of her husband, persists in a course of conduct that brings on a state of facts of which she complains, she is not entitled to relief. *Duvale v. Duvale, 34 All. Rep. 888; affirmed, 65 N. J. Eq. 771.*

She had it in her power to stop the acts of which she complained. If she had treated those children by his former marriage with kindness; if she had cared for those children, as it was her duty to do, instead of refusing to care for them or look after them, it is evident that this conduct of her husband toward her would not have occurred. If she had performed her wifely duties, looked after her husband and his children, provided them food, it is evident they would not have occurred later, but she persisted in her refusal to do this, and this fact alone shows that she disregarded the treatment of her husband of which she complains.

The petitioner is not entitled to the decree prayed for, but the case is one of such character that either of the parties should not be precluded from using the facts proved in this case in seeking other relief.

I advise a decree dismissing the petition without prejudice.

*Mr. John H. Sheridan,* for the appellant.

*Mr. William C. Cudlipp,* for the respondent.

PER CURIAM.

From the testimony taken before the advisory master we reach the same conclusion that he did, viz., that the petition of the appellant should be dismissed. The decree of the court of chancery is affirmed.

*For affirmance*—GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—13.

*For reversal*—None.